**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MÖLNLYCKE HEALTH CARE US, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>SMITH & NEPHEW, INC.,<br><br>Defendant. | Civil Action No.<br><br>Jury Trial Demanded<br><br>____________________ |

## COMPLAINT

Plaintiff Mölnlycke Health Care US, LLC ("Mölnlycke"), files this Complaint and Jury Demand against defendant Smith & Nephew, Inc. ("Smith & Nephew"). In support thereof, Mölnlycke respectfully shows as follows:

## NATURE OF THE ACTION

1. Mölnlycke brings this action for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 et seq., and unfair competition under O.C.G.A. § 23-2-55 and the common law. Mölnlycke seeks all available legal and equitable remedies, including damages, restitution, disgorgement, and injunctive relief.

## PARTIES

2. Plaintiff Mölnlycke Health Care US, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Norcross, Georgia, within this judicial district.

3. Defendant Smith & Nephew, Inc. is a corporation organized and existing under the laws of the State of Delaware and having a principal place of business at 1450 E. Brooks Road, Memphis, Tennessee 38116.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) (action arising under the Lanham Act) and 28 U.S.C. § 1331 (action arising under the laws of the United States), § 1338(a) (action arising under the Lanham Act), § 1338(b) (action asserting claim of unfair competition joined with substantial and related claim under the Lanham Act), and § 1367 (supplemental jurisdiction).

5. This Court has personal jurisdiction over Smith & Nephew, and venue is proper within this judicial district pursuant to 28 U.S.C. § 1391. Smith & Nephew is registered with the Georgia Secretary of State to do business in Georgia. Smith & Nephew's registered agent in Georgia for service of process is

CT Corporation System, 1201 Peachtree Street, Suite 1240, Atlanta, Georgia 30361. Smith & Nephew does business in Georgia and this district, selling, *inter alia*, ALLEVYN wound dressings and other products. Smith & Nephew has also placed many of the false or misleading advertisements and promotional communications that are the subject of this action into interstate commerce and sent them into this judicial district, where they have caused foreseeable harmful commercial injury to Mölnlycke.

6. Mölnlycke has standing to bring this suit because Smith & Nephew's false and misleading advertisements and promotional activities have directly injured Mölnlycke, which has suffered injury to its reputation, commercial interests, and sales, within the zone of interests protected by section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## FACTUAL BACKGROUND

### I. PRESSURE ULCERS

7. Pressure ulcers are injuries to human skin and/or underlying tissue caused by pressure from staying in one position for too long. They commonly form where bone is close to the skin, such as the ankles, back, elbows, heels and hips. Pressure ulcers are also known as pressure sores, bedsores, and decubitus ulcers. Pressure ulcers can be caused by a variety of factors, including malnutrition, skin

wetness caused by sweating or incontinence, diseases that reduce blood flow to the skin, and/or diseases that reduce the sensation in the skin. Pressure ulcers commonly develop in individuals who are not moving about, such as those who are bedridden or confined to a wheelchair.

8. A "Hospital-Acquired Pressure Ulcer" (HAPU) is a pressure ulcer acquired by a patient in a hospital setting.

## II. THE PARTIES' COMPETING WOUND DRESSINGS

9. Mölnlycke and Smith & Nephew compete with each other in many market segments. Mölnlycke and Smith & Nephew both manufacture and sell wound dressings used in the prevention and treatment of pressure ulcers. Mölnlycke markets its line of products under the brand name MEPILEX and Smith & Nephew markets its line of products under the brand name ALLEVYN.

## III. SMITH & NEPHEW'S FALSE ADVERTISING AND PROMOTION OF ALLEVYN LIFE

### A. The Eskenazi HAPU Prevention Program

10. In March 2016, the American Journal of Critical Care published a paper by Katie Swafford, Rachel Culpepper, and Christina Dunn entitled *Use of a Comprehensive Program to Reduce the Incidence of Hospital-Acquired Pressure Ulcers in an Intensive Care Unit* (Exhibit A, the "SCD Paper"). The SCD Paper purports to describe the results of a HAPU prevention program at the Sidney &

Lois Eskenazi Hospital in Indianapolis, Indiana (the "Eskenazi Program").

11. According to the SCD Paper, the Eskenazi Program began at the beginning of 2013 and included use of the Smith & Nephew product ALLEVYN Life, which was introduced as part of the Eskenazi Program in second quarter of 2013.

12. The authors acknowledge the assistance of the public relations firm Watermeadow Medical and two of its employees for "writing and editorial assistance, which was financially supported by Smith & Nephew. . . ." According to its website, Watermeadow Medical provides "strategic communications," "creative branding and marketing," "publication planning and medical writing," "scientific PR," and similar services.

13. Smith & Nephew financially supported the writing and publication of the SCD Paper because it planned to use the SCD Paper for advertising and promotional purposes.

14. Smith & Nephew has pointed to the SCD Paper as substantiation for false, misleading and/or unsubstantiated "tests prove" or "establishment" claims in advertisements and promotional communications, including (1) a press release dated June 28, 2016, (Exhibit B, the "Smith & Nephew Press Release"), (2) a webpage on Smith & Nephew's website promoting ALLEVYN Life, (Exhibit C,

"Smith & Nephew's ALLEVYN Life Promotional Webpage"), (3) presentations made at trade shows promoting ALLEVYN Life ("Smith & Nephew's Trade Show Presentations"), and (4) verbal statements made by Smith & Nephew to potential customers of wound dressings. As shown below, the SCD Paper does not support or substantiate Smith & Nephew's claims.

**B. The 69% Reduction Claim In Smith & Nephew's Press Release Is False, Misleading, And/Or Unsubstantiated**

15. In June 2016, a few months after the publication of the SCD Paper in March 2016, Smith & Nephew promoted and republished the SCD Paper on its website, issuing the Smith & Nephew Press Release purporting to "announce" the publication of the SCD Paper.

16. The Smith & Nephew Press Release stated:

## New protocol including the use of ALLEVYN◊ LIFE reduces hospital-acquired pressure ulcers by 69% in large facility

**28 June 2016**

Smith & Nephew (LSE:SN, NYSE:SNN), the global medical technology business, announces the publication of a new research paper showing how a comprehensive ulcer prevention programme which included the use of ALLEVYN LIFE can significantly decrease hospital-acquired pressure ulcers (HAPUs).[1]

The study was conducted in an adult intensive care unit (ICU) at Eskenazi Health, Indianapolis, Indiana, US, between 2012 and 2013, and published in the American Journal of Critical-Care Nurses.



The research emphasises that hospitals who adopt a standardised protocol for the prevention and treatment of HAPUs may see potential cost benefit of such prevention. At the end of the first year, the prevention programme demonstrated a 69% decrease in HAPUs.[1] The estimated potential cost saving for the Eskenazi Health ICU was nearly $1 million, and the convincing results in the ICU have led to the approval of a hospital-wide rollout of the HAPU prevention programme. [1]

ALLEVYN LIFE, a silicone foam dressing also indicated for the treatment and prevention of pressure ulcers, developed by Smith & Nephew, was introduced to the protocol as part of the standard prevention method three months into the programme.

Rachel Culpepper, Registered Nurse at Eskenazi Health stated, "This study validates the need for a comprehensive, proactive, collaborative prevention programme in hospitals. Although it is difficult to isolate the effects of individual programme components, silicone foam dressings can complement an existing pressure ulcer prevention programme, and are believed to contribute to the reduction in HAPUs."

17. The Smith & Nephew Press Release, which includes an image of the

product and a hyperlink to the product page where samples and ordering codes are displayed, is a commercial advertisement and promotional communication for Smith & Nephew's ALLEVYN Life dressing and is designed to bolster Smith & Nephew's image and influence potential purchasers to buy ALLEVYN Life dressings.

18. Smith & Nephew disseminated the Smith & Nephew Press Release to purchasers in a manner sufficient to constitute "advertising" or "promotion" within the health care industry.

19. The Smith & Nephew Press Release is commercial speech, advertising, and/or a promotional communication.

20. The Smith & Nephew Press Release conveys, explicitly or implicitly, the message that the ALLEVYN Life dressings played a role in the reported 69% reduction of HAPUs. The Smith & Nephew Press Release highlights the "inclusion" of ALLEVYN Life dressings in the Eskenazi Program with the intent and effect of conveying the misleading, false, and/or unsubstantiated claim that the ALLEVYN Life dressings were responsible for reducing HAPUs in the study.

21. The Smith & Nephew Press Release makes false, misleading and/or unsubstantiated assertions of fact.

22. In the press release headline title, Smith & Nephew asserts that "New

protocol including the use of ALLEVYN Life reduces hospital-acquired pressure ulcers by 69% in large facility" (the "69% Reduction Claim"). This headline title is false, misleading, and/or unsubstantiated because the HAPU incidence rate had already been reduced by 60% before the 2013 Eskenazi Program began and before the use of ALLEVYN Life in the program began. At most, only 9 points of the claimed 69% reduction in HAPUs occurred as a result of the Eskenazi Program and a result of using ALLEVYN Life. Thus, 60 points of the claimed 69% point reduction occurred before the "[n]ew protocol including the use of ALLEVYN Life" was introduced. Moreover, the purported incremental 9% reduction that occurred in 2013 after the program started using ALLEVYN Life dressings is not reliable and cannot be substantiated by the SCD Paper because it is based on an insignificant sample size.

23. Overall, the SCD Paper does not substantiate the Smith & Nephew Press Release because it is based on unreliable methodology and misleading comparisons. For example, it is misleading to compare the reduction between 2011 and 2013 rather than between 2012 and 2013.

24. The body of the Smith & Nephew Press Release also contains the false, misleading, and/or unsubstantiated statement that, "[a]t the end of the first year, the prevention program demonstrated a 69% decrease in HAPUs." This

statement is false because 60 points of the claimed 69% point reduction had already occurred before the program was instituted and before the earliest use of the ALLEVYN Life dressings in the program.

25. The 69% Reduction Claim in the Smith & Nephew Press Release is an assertion of verifiable fact that requires substantiation and support.

26. The 69% Reduction Claim in the Smith & Nephew Press Release is a “tests prove” or “establishment” claim that as a matter of law requires substantiation and support.

27. The SCD Paper does not support or substantiate the 69% Reduction Claim in the Smith & Nephew Press Release. The data reported in the SCD Paper shows that 60 points of the claimed 69% point reduction in HAPUs occurred in 2012, before the Eskenazi hospital implemented the Eskenazi Program and before the hospital began using ALLEVYN Life dressings in the program in the second quarter of 2013.

28. The 69% Reduction Claim in the Smith & Nephew Press Release is false, misleading, and/or unsubstantiated because, according to the data in the SCD Paper, the rate of incidence of HAPUs had already fallen 60% in 2012, before the Eskenazi hospital implemented the Eskenazi Program and before the hospital began using ALLEVYN Life dressings in the program in the second quarter of

2013.

29. The Smith & Nephew Press Release distorts the data and conclusions in the SCD Paper by abbreviating and truncating the SCD Paper, omitting, for example, the acknowledgement in the paper that "[t]he incidence of HAPUs declined markedly in 2012 compared to 2011, before implementation of the full prevention program."

### C. The 69% Reduction Claim In Smith & Nephew's ALLEVYN Life Promotional Webpage Is False, Misleading And/Or Unsubstantiated

30. Smith & Nephew's ALLEVYN Life Promotional Webpage was made and published for the purpose of influencing potential customers to buy Smith & Nephew's ALLEVYN Life dressings, as evidenced, *inter alia*, by the image of the product integrated into the communication.

31. Smith & Nephew's ALLEVYN Life Promotional Webpage is commercial speech, advertising, and/or a promotional communication.

32. Smith & Nephew made and published to purchasers Smith & Nephew's ALLEVYN Life Promotional Webpage in a manner sufficient to constitute "advertising" or "promotion" within the health care industry.

33. Smith & Nephew's ALLEVYN Life Promotional Webpage makes the following false, misleading, and/or unsubstantiated claims:

> In a recent evaluation in the acute care ICU of Eskenazi Health, Indianopolis, US, ALLEVYN LIFE was used as part of a pressure ulcer prevention protocol consistent with International guidelines[4].
>
> Implementation of a pressure ulcer prevention protocol including the use of ALLEVYN LIFE resulted in...
>
> - A reduction in the incidence of pressure ulcers by 69%[4]
> - A cost saving of approximately $1 million[4]

34. The SCD Paper does not support or substantiate the 69% Reduction Claim found on Smith & Nephew's ALLEVYN Life Promotional Webpage. The data reported in the SCD Paper shows that 60 points of the claimed 69% point reduction in HAPUs occurred in 2012 before the Eskenazi hospital implemented the Eskenazi Program and before the hospital began using ALLEVYN Life dressings in the program in the second quarter of 2013.

35. The 69% Reduction Claim found on Smith & Nephew's ALLEVYN Life Promotional Webpage is false, misleading, and/or unsubstantiated because, according to the data in the SCD Paper, the rate of incidence of HAPUs had already fallen 60% in 2012, before the Eskenazi hospital implemented the Eskenazi Program and before the hospital began using ALLEVYN Life dressings in the program in the second quarter of 2013.

36. The 69% Reduction Claim found on Smith & Nephew's ALLEVYN

Life Promotional Webpage distorts the data and conclusions in the SCD Paper by abbreviating and truncating the SCD Paper, omitting, for example, the acknowledgement in the paper that "[t]he incidence of HAPUs declined markedly in 2012 compared to 2011, before implementation of the full prevention program."

### D. Smith & Nephew's False and Misleading Advertisements and Promotion At Trade Shows

37. Smith and Nephew has integrated the false, misleading, and/or unsubstantiated 69% Reduction Claim into numerous promotional presentations at trade shows.

38. For example, but without limitation, at the Association of periOperative Registered Nurses Global Surgical Conference & Expo (hereinafter, "AORN Conference") in Boston in April 2017, two authors of the SCD Paper, Katie Swafford and Rachel Culpepper, joined Smith & Nephew's Clinical Affairs Manager Terry Coggins to give a presentation to registered nurses and other potential customers of wound dressings. The presentation combined a discussion of pressure ulcers with commercial speech designed and intended to advertise and promote the sale of ALLEVYN Life to potential customers attending the trade show.

39. At the AORN Conference, the presenters repeated the false, misleading, and/or unsubstantiated 69% Reduction Claim, and again failed to

disclose that 60 points of the claimed 69% point reduction occurred prior to the implementation of the prevention program, and again made the false or misleading statement or implication that use of ALLEVYN Life dressings was responsible for the purported 69% reduction, even though 60 points of the claimed 69% point reduction occurred prior to any use of ALLEVYN Life dressings in the program.

40. Smith & Nephew has sponsored, supported, and encouraged its representatives to participate in joint presentations with the authors of the SCD Paper at trade shows for the purpose of influencing potential customers to buy Smith & Nephew's ALLEVYN Life dressings.

41. Smith & Nephew sponsored and supported joint presentations with the authors of the SCD Paper at trade shows, which presentations constitute commercial advertising or promotion within the health care industry.

42. Smith & Nephew's advertisements and promotional communications (including the Smith & Nephew Press Release, Smith & Nephew's ALLEVYN Life Promotional Webpage, and presentations given at trade shows), in addition to being false, misleading, and/or unsubstantiated, deceive or have a tendency to deceive potential purchasers.

43. Smith & Nephew's false, misleading, and/or unsubstantiated 69% Reduction Claim is material to purchasers of pressure ulcer dressings in the health

care industry because it misrepresents an inherent quality or characteristic of Smith & Nephew's ALLEVYN products.

44. Because Mölnlycke's wound dressings directly compete with ALLEVYN and ALLEVYN Life, Smith & Nephew's false and/or misleading advertisements and promotional communications cause enormous commercial, economic, and reputational harm to Mölnlycke.

## COUNT I
## FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT

45. Mölnlycke repeats and realleges the allegations set forth in paragraphs 1-44 as if fully set forth herein.

46. Smith & Nephew's false, deceptive, and/or misleading commercial advertising and promotion in interstate commerce about the nature, characteristics, and quality of ALLEVYN Life violate Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

47. Smith & Nephew's false, deceptive, and/or misleading advertisements and promotions have the capacity to deceive consumers and are likely to influence purchasing decisions.

48. Smith & Nephew's false, deceptive, and/or misleading advertisements and promotions have a material effect on purchasing decisions.

49. Smith & Nephew's false, deceptive, and/or misleading advertisements

and promotions have caused and will continue to cause irreparable harm to Mölnlycke.

50. As a direct and proximate result of Smith & Nephew's false, deceptive, and/or misleading advertising and promotional activities, Mölnlycke has suffered economic and reputational injury. This injury falls within the zone of interests protected by § 1125(a) because Mölnlycke has suffered injury to its reputation, commercial interests, and/or sales as a result of Smith & Nephew's actions.

**COUNT II**
**VIOLATION OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT**

51. Mölnlycke repeats and realleges the allegations set forth in paragraphs 1-50 as if fully set forth herein.

52. Smith & Nephew's false, deceptive, and/or misleading advertising and promotional activities violate the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372.

**COUNT III**
**VIOLATION OF THE GEORGIA UNFAIR COMPETITION STATUTE**

53. Mölnlycke repeats and realleges the allegations set forth in paragraphs 1-50 as if fully set forth herein.

54. Smith & Nephew's false, deceptive, and/or misleading advertising and

promotional activities violate the Georgia Unfair Competition Statute, O.C.G.A. § 23-2-55.

**COUNT IV**
**COMMON LAW UNFAIR COMPETITION**

55. Mölnlycke repeats and realleges the allegations set forth in paragraphs 1-50 as if fully set forth herein.

56. By reason of the foregoing, Smith & Nephew has engaged in unfair competition in violation of the common law.

**JURY DEMAND**

57. Mölnlycke demands a trial by jury on all issues so triable as a matter of right and law.

**PRAYER FOR RELIEF**

WHEREFORE, by virtue of the unlawful conduct of Smith & Nephew, plaintiff Mölnlycke respectfully prays that:

A. The Court enter judgment that Smith & Nephew has engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), has engaged in deceptive trade practices in violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 et seq., and has engaged in unfair competition under O.C.G.A. § 23-2-55 and the common law;

B. The Court permanently enjoin Smith & Nephew, its officers, agents

and servants, employees, attorneys, and all others in active concert of participation with it who receive actual notice, pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116(a), from publishing, distributing, disseminating, or otherwise making the false and/or misleading claim in commercial advertising or promotional communications that the Eskenazi Program including ALLEVYN Life reduced HAPUs by 69%.

C. The Court order Smith & Nephew to disseminate, in a form to be approved by the Court, a retraction of the 69% Reduction Claim and corrective advertising sufficient to reach all those who were the target of its false and deceptive claims;

D. The Court order Smith & Nephew, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve on Mölnlycke within thirty days after entry of the injunction a report in writing and under oath setting forth in detail the manner and form in which Smith & Nephew has complied with the injunction;

E. The Court award Mölnlycke Smith & Nephew's profits and/or Mölnlycke's damages from Smith & Nephew's false and misleading advertising, deceptive trade practices, and unfair competition, in an amount to be determined by the trier of fact and to be increased as provided by applicable law due to Smith & Nephew's willful violation of the law;

F. The Court declare that this is an "exceptional case" under 15 U.S.C. § 1117(a), and that Mölnlycke is therefore entitled to an award of its attorneys' fees and full costs;

G. The Court award Mölnlycke punitive damages for Smith & Nephew's intentional, willful, and malicious conduct to the extent permitted by law;

H. The Court award Mölnlycke such other and further relief as the Court deems just and proper.

[Signature block on the next page]

Dated: April 5, 2017

Respectfully submitted,

/s/ *Lawrence K. Nodine*
Lawrence K. Nodine
(Georgia Bar No. 545250)
nodinel@ballardspahr.com
Richard W. Miller
(Georgia Bar No. 065257)
millerrw@ballardspahr.com
Ramtin Taheri
(Georgia Bar No. 707649)
taherir@ballardspahr.com
Daniel B. Englander
(Georgia Bar No. 129215)
englanderd@ballardspahr.com
Chittam U. Thakore
(Georgia Bar No. 890965)
thakorec@ballardspahr.com
Ballard Spahr LLP
999 Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309
Telephone: (678) 420-9300
Facsimile: (678) 420-9301

*Attorneys for Plaintiff*
*Mölnlycke Health Care US, LLC*